**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-1148-CBS

D THREE ENTERPRISES, LLC,

      Plaintiff,

v.

RILLITO RIVER SOLAR LLC, d/b/a
ECOFASTEN SOLAR,

      Defendant.

_____

Civil Action No. 15-cv-1151-CBS

D THREE ENTERPRISES, LLC,

      Plaintiff,

v.

SUNMODO CORPORATION,

      Defendant.

_____

MEMORANDUM OPINION AND ORDER
_____

Magistrate Judge Craig B. Shaffer

In these related actions, Plaintiff D Three Enterprises LLC ("D Three" or "Plaintiff")

claims that Defendants Rillito River Solar LLC, d/b/a EcoFasten Solar ("EcoFasten") and

SunModo Corporation ("SunModo") infringe three of Plaintiff's patents directed to roof mount

assemblies.  Defendants filed two joint motions for summary judgment.  For the reasons that

follow, the court grants summary judgment to Defendants on their motion regarding effective

filing dates and invalidity in view of intervening prior art.  The court denies Defendants' other joint summary judgment motion as moot.[1]

## FACTUAL BACKGROUND

Plaintiff initiated these actions on June 2, 2015.  EcoFasten is the Defendant in Civ. 15–1148.  SunModo is the Defendant in Civ. 15-1151.  Each party consented to the magistrate judge's jurisdiction to "conduct all further proceedings in this civil action, including trial, and to order the entry of a final judgment," pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D.C.COLO.LCivR 72.2.  Accordingly, the cases were referred to this court on respectively August 31, 2015 and September 4, 2015.

On April 22, 2016, Defendants filed a joint motion for summary judgment "regarding effective filing dates and invalidity in view of intervening prior art."  Doc. #51 (referred to hereafter as the "Motion").  Plaintiff responded.  Doc. #55 (hereafter, "Response").  Defendants replied.  Doc. #63.  Plaintiff later filed a notice of supplemental authority in support of its response.  Doc. #79.  Defendants also filed a joint motion for summary judgment arguing "invalidity based on 35 U.S.C. §§ 102 and 103."  Doc. #56.  Plaintiff timely responded.  Doc. #69.  Defendants replied.  Doc. #77.  On November 8, 2016, the court heard oral argument for both cases.  Doc. #80.

The following facts appear to be undisputed.  Plaintiff asserts that each Defendant infringes three of Plaintiff's patents: U.S. Patent No. 8,689,517 (the '517 Patent, doc. #52–9), U.S. Patent No. 8,707,655 (the '655 Patent, doc. #52–10), and U.S. Patent No. 9,068,339 (the '339 Patent, doc. #52–11).  The patents in suit relate generally to roof mount assemblies that are

---

[1] These cases are not consolidated, but the briefing is identical.  For convenience, the court refers to the briefs in Civ. 15–1148.  This decision applies to both cases.

used to mount items to roofs, typically (but not necessarily) solar panels. Figures 1 and 2 in the '517 and '655 Patents[2] (Figures 20 and 21 in the '339 Patent) illustrate one assembly:



FIG. 1

FIG. 2

In these figures, 1906 is a soft or flexible washer that together with the body (or core) 1908 is screwed down to the 1902 flashing's raised area, compressing the flashing to the 1901 base bracket mounted to a roof. Other figures depict three types of attachment brackets (or attachment elements) that attach to the foregoing via the bolt 412: a support post, a W spring base (also referred to as a W pronged bracket), and a T slide. *See, e.g.,* '517 patent and '655 patent at col. 2, ll. 25, 47–50; Figs. 7 (support post), 19 (W spring base), 20 (T slide); '339 patent at Figs. 26, 34–36, 40, 41, 46, 56, 57. The attachment bracket receives the item such as a solar panel for mounting to the roof.

---

[2] The '517 and '655 Patents share identical, or virtually identical, specifications and differ only as to the claims. Docs. # 52–9 and 52–10 at pp. 1–32.

The '517, '655 and '339 Patents arose from a chain of applications beginning with a provisional application filed on February 5, 2009.  The parties depict that chain as follows:



Except for the provisional application filed on October 26, 2009, each of the applications is in the record.

| Application | Record reference |
|---|---|
| Provisional No. 61/150,301, filed February 5, 2009 ("2009 application") | A, Doc. #52–1 |
| No. 12/700,667 filed February 4, 2010 ("2010 application") | B, Doc. #52–2 |
| Provisional No. 61/440,847, filed February 8, 2011 ("2011 application") | C, Doc. #52–3 |
| No. 13/368,332, filed February 8, 2012 ("2012 application") | D, Doc. #52–4 |
| No. 13/799,359, filed March 13, 2013 ("March 2013 application") | E, Doc. #52–5 |
| No. 14/018,137, filed September 4, 2013 ("'137 | F, Doc. #52–6 |

| | |
|---|---|
| application") | |
| No. 14/018,143, filed September 4, 2013 ("'143 application") | G, Doc. #52–7 |
| No. 14/196,867, filed March 4, 2014 ("March 2014 application") | 4, Doc. #55–5 |
| No. 14/504,663, filed October 2, 2014 ("October 2014 application") | H, Doc. #52–8 |

According to Defendants, Plaintiff asserts the following claims from the patents:

| *Defendant* | *'517 Patent Claims* | *'655 Patent Claims* | *'339 Patent Claims* |
|---|---|---|---|
| EcoFasten | 1–4, 6, 9–14, 16 | 1–7 | 1–10 |
| SunModo | 1, 14 | 1–5, 7–9, 11, 13 | 1, 2, 4, 5, 7–10 |

Motion at p. 1, n.1.  Plaintiff's claim contentions agree with this summary.  Docs. #52–19, 52–20.  At oral argument, Plaintiff omitted claim 3 of the '339 Patent from its presentation.

Plaintiff accuses two SunModo products of infringing subsets of the asserted claims: SunModo's products Kit# K10068–001 ("EZ Mount L-Foot Kit for Shingle Roofs") and Kit# K10070–002 ("EZ Mount assembly with Standoff for Shingle Roofs").  Motion at p. 21, n.14; Docs. #52–21 and 52–22 (claim charts as to SunModo); Doc. #52–19 (disclosure of claims and infringement contentions as to SunModo) at pp. 1–2.  SunModo provides a declaration of Jun "Tony" Liu attaching records to show these products were available to the public in 2010.  Docs. #53, 53–1 through 53–5.  Plaintiff did not dispute these facts.

When Plaintiff disclosed its claim and infringement contentions, Plaintiff accused four EcoFasten products.  These are the QuikFoot Roof Mount System, the Eco-65 System or Eco-65 Roof Mount Assembly, Tile Flashing System, and the Eco-44R-NDD system.  Motion at p. 21, n.16; Doc. #52–20 (disclosure of claims and infringement contentions as to EcoFasten), Doc.

#52–27 (claim charts as to EcoFasten).  In the motion for summary judgment, EcoFasten states

that three of those products were available to the public as follows:

| EcoFasten Accused Product | Date Publicly Available |
|---|---|
| EcoFasten QuikFoot Roof Mount System | At least June 2009 |
| Eco-65 System | At least December 2007 |
| Eco-44R-NDD System | At least May 2011 |

Motion at p. 22.[3]  In support, EcoFasten provides a declaration of Brian C. Stearns and attached

invoices regarding sales of these products.  Docs. #54, 54–1 through 54–4.  Plaintiff did not

dispute these facts, but in a footnote Plaintiff dropped the Eco-65 and Eco-44R-NDD from its

claims.  Response at p. 40, n.4.

## ANALYSIS

I.    *Summary Judgment Standards*

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).

> [A] judge's function at summary judgment is not to weigh the
> evidence and determine the truth of the matter but to determine
> whether there is a genuine issue for trial.  … In making that
> determination, a court must view the evidence in the light most
> favorable to the opposing party.

*Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) (internal quotation marks and citations omitted,

quoting *inter alia Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

> Once the moving party has satisfied its initial burden, the opposing
> party must establish a genuine issue of material fact and cannot
> rest on mere allegations, but must present actual evidence.  Issues
> of fact are genuine only if the evidence is such that a reasonable
> jury could return a verdict for the nonmoving party.  A disputed

---

[3] In the motion, EcoFasten transposed the dates for Eco-65 and Eco-44R-NDD.  EcoFasten's
evidence and its reply reflect that the Eco-65 System, not the Eco-44R-NDD, is the product
available since December 2007.  Docs. #54 Stearns Dec. ¶ 5; #54–4; #63 (reply) at p. 17.
Plaintiff did not dispute EcoFasten's facts regarding the dates of first sales.

> fact is material if it might affect the outcome of the suit such that a finding of that fact is necessary and relevant to the proceeding.

*Crown Operations Int'l, Ltd. v. Solutia Inc.,* 289 F.3d 1367, 1375 (Fed. Cir. 2002) (internal quotation marks and citation omitted, citing *Anderson*, 477 U.S. at 248).  On Defendants' summary judgment motion, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson,* 477 U.S. at 251–52.

II.      *35 U.S.C. § 120 Effective Filing Dates*

The patents in suit assert the benefit of the 2009 application's effective filing date (February 5, 2009) pursuant to 35 U.S.C. § 120, which provides in relevant part:

> An application for patent for an invention disclosed in the manner provided by section 112(a) … in an application previously filed in the United States … which names an inventor or joint inventor in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application.

35 U.S.C. § 120 (omitting certain criteria not addressed here).  In this case, Defendants argue that the 2009 application (or intervening applications) lacks sufficient written description under § 112(a), referenced in § 120, to support the asserted claims in the '517, '665 and '339 patents.  Thus, Defendants argue the patents in suit are not entitled to the benefit of the 2009 application's February 5, 2009 filing date.

A.      *Legal Standards for Written Description Requirement*

Section 112(a) requires that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains … to make and use the same."  35 U.S.C. § 112(a) (in relevant part).  The Federal Circuit interprets § 112(a) as

"contain[ing] a written description requirement separate from enablement." *Ariad Pharm., Inc.*

*v. Eli Lilly & Co.,* 598 F.3d 1336, 1340 (Fed. Cir. 2010) (*en banc*).

> To satisfy the written description requirement, the disclosure of the earlier filed application must describe the later claimed invention in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought. ... While the earlier application need not describe the claimed subject matter in precisely the same terms as found in the claims at issue ... the prior application must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, the inventor was in possession *of the invention.*

*Tech. Licensing Corp. v. Videotek, Inc.,* 545 F.3d 1316, 1331–32 (Fed. Cir. 2008) (internal

quotation marks and brackets omitted, citing *inter alia Lockwood v. Am. Airlines, Inc.,* 107 F.3d

1565, 1572 (Fed. Cir. 1997)). *See also Moba, B.V. v. Diamond Automation, Inc.,* 325 F.3d 1306,

1319 (Fed. Cir. 2003) (same standard). "One does that by such descriptive means as words,

structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention."

*Lockwood,* 107 F.3d at 1572. *See also Enzo Biochem, Inc. v. Gen-Probe, Inc.,* 285 F.3d 1013,

1021 (Fed. Cir. 2002) (same standard), *vacated on other grounds on rehearing,* 323 F.3d 956

(Fed. Cir. 2002).

> [T]he issue is whether a person skilled in the art would understand from the earlier application alone, without consulting the new matter in the [patent at issue] … that the inventor had possession of the [invention now] claimed … when the [parent] … application was filed.

*Tech. Licensing,* 545 F.3d at 1333–34. "While the meaning of terms, phrases, or diagrams in a

disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all the

limitations must appear in the specification." *Lockwood,* 107 F.3d at 1572. "This requires that

the written description actually or inherently disclose the claim element." *PowerOasis, Inc. v. T-*

*Mobile USA, Inc.,* 522 F.3d 1299, 1306 (Fed. Cir. 2008). "In order for a disclosure to be inherent,

however, the missing descriptive matter must necessarily be present in the parent application's

specification such that one skilled in the art would recognize such a disclosure." *Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1159 (Fed. Cir. 1998).

In other words, "one skilled in the art, reading the original disclosure, must reasonably discern the limitation at issue in the claims." *Crown Operations,* 289 F.3d at 1376. *See also Waldemar Link, GmbH & Co. v. Osteonics Corp.,* 32 F.3d 556, 558–559 (Fed. Cir. 1994) (standard is whether an artisan would "immediately discern the limitation at issue in the parent"). If the asserted claims describe an invention that "is an obvious variant of that which is disclosed in the [earlier] specification," or "renders obvious the invention for which an earlier filing date is sought," that is insufficient. *Lockwood*, 107 F.3d at 1572.

The court analyzes this issue on a claim-by-claim basis. For instance, the chain of applications leading to the '517 and '655 Patents includes a continuation in part application. "Different claims of [a continuation in part, CIP] application may therefore receive different effective filing dates. ... Subject matter that arises for the first time in [a] CIP application does not receive the benefit of the filing date of the parent application." *PowerOasis,* 522 F.3d at 1306 (quoting *Augustine Med., Inc. v. Gaymar Indus., Inc.,* 181 F.3d 1291, 1302–03 (Fed. Cir. 1999)). *See also Waldemar,* 32 F.3d at 558 ("Claims containing any matter introduced in the CIP are accorded the filing date of the CIP application.").

An asserted claim must be entirely supported by the parent application's disclosure; the Federal Circuit does not parse a claim into supported and unsupported portions. The parent application's written description must "support[] *all the limitations of ... [each] claim being asserted.*" *Tech. Licensing,* 545 F.3d at 1327 (emphasis added). If an asserted claim includes what the parent application disclosed but also encompasses broader inventions, this causes the entire claim to be unentitled to an earlier effective date. *See, e.g., Research Corp. Techs., Inc. v.*

*Microsoft Corp.,* 627 F.3d 859, 871–72 (Fed. Cir. 2010) (asserted claims that encompassed but were broader than what original applications disclosed did not have the benefit of earlier filing date for any aspect of the asserted claims); *Tronzo,* 156 F.3d at 1159–60 (same).  Moreover, "[i]n order to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, *each application in the chain* leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112."  *Lockwood,* 107 F.3d at 1571 (emphasis added).  *See also L.A. Biomed. Research Inst. v. Eli Lilly & Co.,* – F.3d –, No. 2016–1518, 2017 WL 765812, at *5 (Fed. Cir. Feb. 28, 2017).

"Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party."  *PowerOasis,* 522 F.3d at 1306–07.  *See, e.g., TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.,* 264 F.3d 1111, 1119 (Fed. Cir. 2001).  Defendants bear the "burden of persuasion … to prove invalidity by clear and convincing evidence."  *Tech. Licensing,* 545 F.3d at 1327.  *See also Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011).  The alleged infringer's burden of persuasion on invalidity never shifts to Plaintiff.  *Tech. Licensing*, 545 F.3d at 1329.  However, once Defendants bring forward sufficient facts to support that the patents in suit are not entitled to earlier effective filing dates, and the existence of intervening prior art that would invalidate the patents, then Plaintiff has

> the burden of going forward with evidence either that the prior art does not actually anticipate, or, as was attempted in this case, that it is not prior art because the asserted claim is entitled to the benefit of a filing date prior to the alleged prior art.

*Id.* at 1327.  *See also Research Corp.,* 627 F.3d at 870–71.

Specifically, to survive Defendants' summary judgment motion, Plaintiff must present "evidence and argument to show that an ancestor to" the '517, '665 and '339 patents with a filing

date prior to the Defendants' earliest public sales of accused products "contains a written description that supports all the limitations of … [each] claim being asserted." *Tech. Licensing,* 545 F.3d at 1327.  If Plaintiff does so, then the burden of production shifts back to Defendants "to convince the court that [Plaintiff] is not entitled to the benefit of the earlier filing date. 'Convince' is the operative word, because … [Defendants must] persuade[] by clear and convincing evidence that [they are ] … correct." *Id.* at 1328.

Plaintiff argues that its patents are entitled to a presumption that they meet the § 112 written description requirement and that they are "entitled to their granted effective filing dates." Response at p. 6.  More specifically, Plaintiff argues that for the asserted claims that recite a washer, it was not required to present evidence of written descriptions because

> Claim 8 of the '655 Patent and Claim 4 of the '339 Patent[s] … were examined and allowed by the PTO [Patent and Trademark Office] and awarded an effective filing date corresponding to the filing date of the '301 Application.  Thus, these claims must be presumed to be valid as issued, disclosed and enabled by the '301 Application.

Response at p. 19.  Plaintiff cites *Pfizer, Inc. v. Apotex, Inc.,* 480 F.3d 1348, 1359 (Fed. Cir. 2007).  *Pfizer* recognizes that patents are presumed valid, but the case does not address an effective filing date issue.

There is no presumption that a patent is entitled to an earlier effective filing date.  "[A] patentee bears the burden of establishing that its claimed invention is entitled to an earlier priority date than an asserted prior art reference."  *In re Magnum Oil Tools Int'l, Ltd.,* 829 F.3d 1364, 1375–76 (Fed. Cir. 2016).  The Federal Circuit has ruled for instance that "because the PTO does not examine provisional applications as a matter of course[,] such a presumption is … not justified" for patents that claim the benefit of a provisional application, as is the case here. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,* 800 F.3d 1375, 1380 (Fed. Cir. 2015).  In

addition, the '517 and '655 patents derive from CIP applications, and "[i]n general, the

presumption of validity does not … create a presumption that all claims issuing from a CIP

application may properly claim entitlement to the filing date of the parent application."  Robert

A. Matthews, Jr., 3 Annotated Patent Digest § 16:31.50 (Feb. 2017) (discussing *PowerOasis*, 522

F.3d at 1303–06).

> When neither the PTO nor the Board [of Patent Appeals and
> Interferences] has previously considered priority, there is … no
> reason to presume that claims in a CIP application are entitled to
> the effective filing date of an earlier filed application. Since the
> PTO did not make a determination regarding priority, there is no
> finding for the district court to defer to.

*PowerOasis,* 522 F.3d at 1305.  *See also Tech. Licensing,* 545 F.3d at 1330–31.  The patents in

suit "claim" the benefit of the earlier applications' filing dates and identify those filing dates, but

do not state that they are entitled to that benefit.  '517 patent at col. 1, l. 8; '655 patent at col. 1, l.

8; '339 patent at col. 1, l. 9.  Plaintiff does not point to a decision of the PTO or Board regarding

the effective filing dates.  Hence, Plaintiff cannot rely on either a presumption or judicial

deference to show that the patents are entitled to an earlier effective date.

B.       *Do the Parent Applications Support the Asserted Claims?*

Defendants argue that Plaintiff's asserted claims are broader than the 2009 application's

disclosure in several aspects, primarily regarding the (a) number of mounting holes (two *vs.* "at

least one") for the base bracket, (b) presence of a washer, (c) presence of a recess encapsulating

the washer, and (d) the location of the washer relative to the flashing.  Plaintiff opposes each

theory, arguing that "[t]he claims of the Patents-in-Suit do not require these limitations, and to

hold otherwise is to import select limitations from preferred embodiments disclosed in the

specification."  Response at p. 3.

Plaintiff misconceives the Sections 120 and 112 inquiry.  The question is not whether the broad scope of Plaintiff's asserted claims should be limited to the preferred embodiments.  Under well-settled patent law, the answer is no.  The question here is whether Plaintiff's applications (particularly the 2009 application) describe inventions at least equal in breadth to the asserted claims.  If they do not, the asserted claims are not entitled to earlier effective filing dates.

The asserted claims fall into two categories: those that do not recite a soft washer, and those that do.  The former category constitutes all but two of the asserted claims; the latter constitutes the two exceptions.  For reasons that will be seen, two questions then are dispositive for the written description requirement: do the parent applications disclose roof mount assemblies that (a) do not have a soft washer but also do not limit the type of attachment bracket, and (b) have a soft washer but do not limit its location.

     1.    *Asserted Claims That Do Not Recite a Washer.*

All but one of the assemblies disclosed in the 2009 application has a soft washer.  2009 application at Figs. 20–26, 36, 40, 42, 43 and narrative descriptions thereof.[4]  For example, the 2009 application discloses a

> soft washer 1906 is placed between the core 1908 and flashing 1903 to provide a water-tight or near water-tight seal. … As core 1908 is solid other than threaded hole 1909, once core 1908 is screwed down on to bolt 1904 with the washer 1906, a water tight seal is formed over the hole 1905 in flashing 1902.

*Id*. at p. 8, ll. 16–18 (describing Figures 20, 21).  Figures 20 and 21 of the 2009 application depict an embodiment of such an assembly with the soft washer 1906:

---

[4] The washer is not always visible but is contained components defined to include such.  2009 application at pp. 8–9 (standoffs 2200 and 2222 and cores 1908 and 1924)



FIG.20

FIG.21

2009 application, Figs. 20–21.[5]  Plaintiff does not dispute that except for claim 8 of the '655

patent and claim 4 of the '339 patent, the asserted claims do not recite a soft washer.

Plaintiff argues that it is unnecessary to recite a soft washer (or its location) because the

asserted claims are "comprising" claims and thus do not exclude unidentified elements.

"Comprising" is a synonym of "including" or "containing," as opposed to "consisting" which

excludes unidentified elements.  Response at pp. 10–11 (citing *In re Gray,* 53 F.2d 520, 522

(C.C.P.A. 1931); *Mars, Inc. v. H.J. Heinz Co., L.P.,* 377 F.3d 1369, 1375–77 (Fed. Cir. 2004);

and *Ex Parte Davis & Tuukkanen,* 80 U.S.P.Q. (BNA) 448 (Feb. 15, 1949)).  Thus, Plaintiff

argues, the asserted claims that do not recite a washer nonetheless can include a washer.

---

[5] Figures 20 and 21 of the 2009 application are virtually identical to the Figures 1 and 2 set forth above from the '517 and '655 patents (also appearing as Figures 20 and 21 in the '339 patent), differing only in whether the hole in 1911 is labeled and whether the 1906 washer is encapsulated within a recess – details immaterial to this order.

That the *asserted claims* are broad enough to either include a soft washer or not is plain, but the question is instead whether the *2009 application* is broad enough to support the claims. Regardless that the claims are the "comprising" type, Plaintiff does not avoid the need to locate written description in the 2009 application for the full scope of the claims that Plaintiff asserts. Plaintiff cites no authority to the contrary.  In *Gray*, the court found proposed patent claims were correctly rejected because the specification identified a particular percentage of indium for a claimed alloy "consisting" of silver-indium; the claims did not recite that range and accordingly "were broader than [the] invention, and did not properly define the article." *Gray*, 53 F.2d at 522.  Nothing in the court's reasoning rests upon the claim as "consisting" of an alloy versus "comprising" an alloy.  *Mars* and *Ex Parte Davis* respectively address the meaning of "comprising" for purposes of claim construction (*Mars*, 377 F.3d at 1375–76) and patentability. *Ex Parte Davis,* 80 U.S.P.Q. at ¶ 448.  Neither case addresses whether the asserted claims were supported by sufficient written description.  "[C]omprising" claims are not exempt from the written description requirement.  *See, e.g., Atl. Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1352–53 (Fed. Cir. 2011) (affirming summary judgment to defendant on "comprising" claims that failed for lack of written description); *Tronzo,* 156 F.3d at 1156, 1158–59 ("comprising" claims were unentitled to the benefit of an earlier filing date).  In short, Plaintiff's "comprising" argument fails.

Plaintiff next argues that the 2009 application discloses assemblies both with and without a soft washer.  Plaintiff does not dispute, however, that the 2009 application discloses only one invention that lacks a washer:  the assembly depicted in Figures 27–33 and 41.  Plaintiff argues that those figures "reasonably convey[] to those skilled in the art that the inventor had possession of subject matter including both roof mounts comprising and not comprising a washer as of the

filing date of the '301 Application." Response at p. 13. Figures 27–33 and 41 of the 2009

application depict an assembly in which an attachment bracket 1700 is bolted directly to the base

bracket through the flashing 1902 without a washer (Figures 30, 41). For example:



2009 application at Figures 27–30, 41.

Defendants argue that Figures 27–30 and 41 and their narrative description are

incomplete and that if they were complete, they would describe a soft washer recessed within the

bolt 2711's head. Defendants do not point to any facts that support this argument. Nothing in

Figures 27–30 or 41 or their narrative descriptions suggests that these figures are incomplete or

that a soft washer is included in the assembly described therein.  Rather, Figure 41 contrasts to

Figure 40, in which the same attachment bracket 1700 bolts into a "standoff 2222," which then

bolts to the base bracket through the flashing.  2009 application at p. 10, ll. 17–19; Figs. 40, 41.



2009 application at Figs. 40, 41 (in relevant part).  Standoff 2222 is defined to have a recessed

soft washer "at the bottom of the core 1924."  *Id.* at Fig. 22 and p. 9, ll. 1–9.  Defendants also do

not point to any instance (in the 2009 application or otherwise) in which Plaintiff has used the

term "bolt" to denote a component which contains a recess to encapsulate a soft washer.  To

describe such a component, Plaintiff instead used the term "core" in the 2009 application.  *Id.* at

*e.g.,* p. 9, ll. 6–7.  Thus, Defendants have not convinced the court that Figures 27–33 and 41 in

the 2009 application disclose an assembly with a soft washer.  These figures and their narrative

descriptions instead disclose an assembly that is washerless.

Defendants next attempt to isolate that washerless assembly to the 2009 application,

arguing that intervening applications abandoned it and limited the inventions to assemblies that

have a soft washer.  The court is again not convinced.  The 2010 application and all intervening

applications that lead to the '339 Patent retain the 2009 application's Figures 27–33 and 41 and

their descriptions.  *See* 2010, March 2014 and October 2014 applications at Figs. 27–33 and 41 and narrative descriptions thereof.  The '339 patent also has the same Figures 27–33 and 41 showing the bracket 1700 assembly without a washer.

Although the CIP applications (*i.e.,* leading to the '517 and '655 patents) do not retain these figures and do not directly disclose any other assembly that lacks a soft washer, they expressly incorporate by reference the 2009 and 2010 applications (among others) "for all purposes."  *See* 2012, 2013 March, '137 and '143 applications at col. 1, first paragraph.[6] "Whether and to what extent a patent incorporates material by reference is a question of law." *Harari v. Hollmer,* 602 F.3d 1348, 1351 (Fed. Cir. 2010).  "[T]o incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents [identified]."  *Cook Biotech, Inc. v. Acell, Inc.,* 460 F.3d 1365, 1376 (Fed. Cir. 2006) (internal quotation marks omitted).  The 2012, 2013 March, '137 and '143 applications' incorporation by reference of the 2009 and 2010 applications is clear and results in continuing disclosure of the Figures 27–33 and 41 washerless assembly using the W pronged attachment bracket 1700.

Defendants further argue that beginning with the 2010 application, Plaintiff abandoned the washerless assembly through narrative descriptions that refer to "all embodiments" as having a soft washer.  Motion at p. 4, n.3 (citing 2010 application at p. 16, ll. 19–20 and each subsequent application other than the March 2014 application).  It is unclear whether the cited passages refer

---

[6] Regardless that the 2010 application did not incorporate the 2009 application by reference, as noted above the 2010 application contains the same Figures 27-33 and 41 showing the bracket 1700 washerless assembly and claims the benefit of the 2009 application.  Defendants do not dispute that as to the inventions set forth directly in the 2010 application, that application timely continued the 2009 application.

to literally all embodiments in the application or only all embodiments in the specific figures being discussed.[7]  Defendants cite for example:

> In Figs. 68, 69 … [t]he threaded hole 6505 serves as a mount for attaching to various stand offs including the embodiments of Fig. 21 and Fig. 54.  … All the embodiments protect the washer 1906 from the sun via a recess such as 6999.

2010 application at p. 16, ll. 19–20; *see also* March 2014 application at p. 16, ll. 15–20 (same); October 2014 application at p. 16, ll. 11–16 (same).  The last sentence could refer to all embodiments mentioned in that paragraph (the "various standoffs including the embodiments of Fig. 21 and Fig. 54") to make plain that the recess (depicted in Figures 68 and 69 from a bottom perspective) receives the 1906 washer, regardless that the washer is not depicted in those figures.  Or, the last sentence could mean literally "all the embodiments" in the application.  The washerless assembly depicted in Figures 27–33 and 41 of the 2010 application (and the others leading to the '339 Patent) weighs against the broader interpretation.  Defendants do not point to evidence that supports their interpretation of the 2010 application's phrase "all embodiments" as either abandoning Figures 27–33 and 41 or as adding a washer to them.

After the 2010 application, the intervening applications include additional references to "all embodiments."  In the 2011 application, one reference is part of a discussion that is not limited to specific figures.  2011 application at p. 7, ll. 27–29.  Yet, as noted, the 2011 application (and each of the others leading to the '517 and '655 patents) incorporates the 2009 and 2010 applications by reference and thus includes the washerless assembly depicted in those applications' Figures 27–33 and 41.  Beginning with the 2012 application, the paragraphs surrounding that same discussion suggest that the discussion of a washer being in "all embodiments" regards only all embodiments in the subset of figures under discussion.  *See, e.g.,*

---

[7] The same is true of the intervening application that Defendants did not cite for this point. March 2014 application at p. 16, ll. 19–20.

2012, March 2013, '137 and '143 applications at pp. 7, 10, 13 (discussing Figures 10–14, 21–22, 25a-b, 27a-c).  In short, the court finds the applications ambiguous regarding whether the cited references to "all embodiments" abandon the washerless assembly disclosed in the 2009 application's Figures 27-33 and 41.

Nevertheless, the asserted claims are broader than the 2009 application's washerless assembly.  In all of the applications, the washerless assembly consistently has one type of attachment bracket: no. 1700.  *See* Figures 27–33 and 41 in the 2009, 2010, March 2014 and October 2014 applications.  In its response, Plaintiff recognizes this fact.  Response at p. 12 (recognizing that Figure 41 regards "bracket 1700").  The applications consistently define bracket 1700 as having "W shaped prongs 1701 and face seat 1702 [that] can hold a support post 100 in a conventional male/female interaction when needed."  2009 application at p. 9, ll. 19–21.

Despite recognizing that Figure 41's bracket 1700 assembly is the sole assembly disclosed in the 2009 application that does not have a soft washer, Plaintiff did not attempt to show that the asserted claims' generic attachment brackets are supported by the bracket 1700 assembly.[8]  As a matter of undisputed fact, the asserted claims are not limited to assemblies using attachment brackets with the W shaped prongs and face seat that define bracket 1700.  The asserted claims instead recite for instance any "attachment bracket having a third attachment element disposed on an upper portion of said attachment bracket for attaching an object to said attachment bracket."  Claim 1 of the '339 patent at col. 11, ll. 8–10; col. 12, ll. 38–41.  *See also*

---

[8] Defendants recognize that Figure 41 regards the bracket 1700 but do not specifically argue that the asserted claims are generic on attachment brackets and therefore not supported.  Defendants' motion and evidence put Plaintiff "on notice that [it] had to come forward with all of [its] evidence" (*Celotex,* 477 U.S. at 326) "to prove entitlement to … an earlier filing date." *PowerOasis,* 522 F.3d at 1305-06.  Plaintiff recognized this burden in presenting evidence even on § 120 issues (*e.g.,* common inventors) that Defendants did not brief.  Response at pp. 22-27, 29, 31-32.  Having raised the 2009 Figures 27-33 and 41 as the sole 2009 description of a washerless assembly, Plaintiff had the burden of producing evidence that those figures fully support the claims that do not recite a washer.

claims 1 and 14 of the '517 patent at col. 10, ll. 53–55; col. 12, ll. 23–25 (reciting a "core body

having a third attachment element"); claims 11, 13 of the '655 patent at col. 12, ll. 11–20

(reciting a "body comprises a third attachment element").[9]

Nor do the applications suggest that a person skilled in the art would understand the

attachment bracket 1700 as an optional feature for the washerless assembly.  Each application

points to the soft washer as important for solving prior art's lack of watertightness for the other

roof mount assemblies disclosed therein.  *See, e.g.,* 2009 application at p. 8, ll. 12–22; *Id.* at p. 9,

ll. 6-9.[10]  The 2009 application (and each intervening application) discloses three types of

attachment brackets: support post, W pronged, and T slide.  The W pronged bracket is the only

attachment bracket that the application discloses as bolted through the flashing either with (Fig.

40) or without (Fig. 41) a washer.

If a parent application's disclosure using one species of a component could later support a

claim using the genus of that component, the Federal Circuit would have reversed in *Tronzo*.

*Tronzo*, 156 F.3d at 1158–59 (claim that was generic as to shape of hip cup was not supported by

parent's disclosure of a hip cup disclosed as a trapezoid, truncated cone, or conical).  *See also*

*Reiffin v. Microsoft Corp.,* 214 F.3d 1342, 1348 (Fed. Cir. 2000) (discussing *Tronzo's* holding);

*In re Curtis,* 354 F.3d 1347, 1357 (Fed. Cir. 2004) (application that disclosed one species of

friction-enhancing coating did not adequately support the claimed genus of such coatings).

Because the washerless assembly disclosed in the 2009 application was limited to using the W

---

[9] The court assumes in Plaintiff's favor that the body with a third attachment element recited in
the '517 and '655 patents' claims is equivalent to an attachment bracket.  Otherwise, the '517
and '655 patents' asserted claims would clearly not be supported by the 2009 application's
washerless assembly that uses attachment bracket 1700.

[10] *See also* 2010 application at p. 10, ll. 3-14, ll. 25-28; *Id.* at p. 14, ll. 19-22; 2011 application at
p. 3, l. 20 – p. 4, l. 5; *Id.* at p. 4, ll. 17–21; *Id.* at p. 5, l. 11–13; *Id.* at p. 5, ll. 25–27; 2012
application at p. 2, ll. 3–19 (washer also makes possible the prevention of dielectric effects); *Id.*
at p. 5, ll. 5–15; *Id.* at p. 8, ll. 10–13; *Id.* at p. 9, ll. 25–27; *Id.* at p. 13, ll. 2-7.

pronged attachment bracket with face seat defined as attachment bracket 1700 – and the asserted claims are not limited to such a bracket – the asserted claims are not supported by the 2009 application and are not entitled to the 2009 effective filing date. *See, e.g., Research Corp.,* 627 F.3d at 872.

The evidence that Plaintiff presents does not raise a material fact dispute on this issue. Plaintiff points to the declaration of one of the named inventors, David Kreutzman, for support that a person skilled in the art would understand the 2009 application discloses assemblies both with and without a washer.  Doc. #55–7, Kreutzman Declaration ¶ 11.  Mr. Kreutzman points to Figures 40 and 41 of the 2009 application and unspecified "information regarding roof mount and roof mounting technology known by me as one of ordinary skill in the art." *Id.* Mr. Kreutzman's reference to undisclosed information is conclusory, and his reference to Figure 40 does not support Plaintiff's argument: Figure 40 has a washer.  Mr. Kreutzman does not address why Figure 41 – the same assembly discussed above using the W pronged attachment bracket 1700 – would inform a person skilled in the art that Plaintiff possessed a washerless roof mount assembly that uses other attachment brackets.  Nor does Mr. Kreutzman address any of the intervening applications.

Plaintiff has not presented evidence to raise a material fact issue of whether a person of ordinary skill would understand from the 2009 application that the inventors possessed a washerless assembly other than the one requiring the W pronged attachment bracket 1700. Accordingly, the asserted claims that do not recite a washer are not entitled to an earlier effective filing date.

    *2.    Asserted Claims That Recite a Washer*

This leaves claim 8 of the '655 patent and claim 4 of the '339 patent, the asserted claims

that recite a soft washer.  Claim 8 of the '655 patent depends on claim 1 which recites:

> 1. A roof mount, comprising:
> a bracket adapted for attachment to a roof surface, said bracket
>     further including a first threaded attachment element;
> a sheet member having a top surface and a bottom surface for
>     disposition facing the roof surface, said sheet member further
>     including:
>     a raised section defining a protrusion on said top surface and a
>         recess in said bottom surface and having an aperture
>         extending there through, wherein said aperture is configured
>         for alignment with said first threaded attachment element of
>         said bracket;
>     a flange extending about a periphery of a base of said raised
>         section, wherein, when disposed over said base bracket on
>         the roof surface, said recess in said bottom surface of said
>         sheet member receives and surrounds said base bracket and
>         said bottom surface of said flange rests on the roof surface;
>         and
> a body having an end with a second threaded attachment element
>     configured to engage said first threaded attachment element,
>     wherein at least a portion of said bottom surface of said raised
>     section of said sheet member is compressed against a top
>     surface of said bracket when said first and second threaded
>     attachment elements are threadably engaged.

'655 patent at col. 10, ll. 28-52.[11]  Claim 8 recites:

> 8. The apparatus of claim 1, further comprising:
> a soft washer disposed between said bracket and a bottom surface
> of said recess, wherein said soft washer at least partially surrounds
> said aperture in said raised section of said sheet member.

---

[11] The fourth paragraph of claim 1 refers to the first paragraph's "bracket adapted for attachment to a roof surface" as "said base bracket."  The claim recites a "sheet member" instead of a "flashing;" the parties treat the two as synonyms.  Motion at p. 16; Response at p. 19; Doc. #81 Transcript at 55:14–15 (Defendants); *Id.* at 81:20–21 (Plaintiff).  The court will do likewise and does not reach how any terms would be construed for infringement purposes, noting however that this is consistent with Magistrate Judge Watanabe's construction (for a related patent) of "flashing member" and "flashing" as synonyms in *D Three v. EJOT Fastening Sys.,* Civ. 15–1149–MJW, Doc. #67 at p. 5.

*Id*. at col. 11, ll. 13–17.   Claim 8 thus requires the washer to be "disposed between said [base] bracket and a bottom surface of said recess [in the flashing]."   *Id.* at col. 11, ll. 14–15.   The bracket recited in claim 1 is the base bracket.   The recess recited in claim 1 is in the bottom surface of the flashing that faces the base bracket.   Thus, claim 8 of the '655 patent places the washer only *under* the flashing.[12]

In contrast, the 2009 application discloses a soft washer only *above* the flashing.   2009 application at Figs. 20–26, 36, 40, 42, 43 and narrative descriptions thereof.   In the intervening applications, the assemblies that have a soft washer place it either above the flashing or *both* above and below the flashing.   *See, e.g.,* the 2010, March 2014 and October 2014 applications at Figs. 20–26, 36, 40, 42, 43, 54–57, 65–67 and narrative descriptions; 2011 application at Figs. 1– 23 and narrative descriptions[13]; 2012, March 2013, '137 and '143 applications at Figs. 1–12, 15– 25, 27–35 and narrative descriptions.[14]   None of the applications in the record disclose an assembly in which a soft washer is only under the flashing.   Changing the location of the soft washer in the asserted claim causes it to lack support in the parent application unless a person skilled in the art would discern from the 2009 application that the Plaintiff had invented assemblies in which the soft washer could be located elsewhere.   *See, e.g., TurboCare,* 264 F.3d at 1118–19.

---

[12] Plaintiff argues that claim 8 of the '655 patent (like claim 4 of the '339 patent, as will be seen below) permits the washer to be either above or below the flashing.   Response at p. 19.   Plaintiff does not point to any evidence that claim 8 would permit a soft washer above the flashing.

[13] In several depictions, the washer is within elements defined to include such.   The court also assumes in Plaintiff's favor that the 2011 and 2012 applications' double bolt stud assemblies and flat flashings would otherwise support claim 8's limitations of, *e.g.,* a base bracket and a flashing with a raised area.

[14] Plaintiff discloses one assembly that has a soft washer but no flashing.   *See, e.g.,* 2010 application at Fig. 67; 2011 application at Fig. 23.   In its response, Plaintiff does not rely on this disclosure; the asserted claims in the '655 patent recite a flashing.

Plaintiff does not present any facts showing that a person skilled in the art would understand from the 2009 application (or intervening applications) that Plaintiff invented a roof mount assembly in which a soft washer is placed under the flashing.  Plaintiff offers the opinion of Mr. Kreutzman that:

> [a]s one of ordinary skill in the art, and upon reading the '301 [2009] Application, I understand the scope of the '301 Application to encompass embodiments of the roof mount or standoff device assemblies that could include additional and different washer locations than those explicitly shown.  For example, as one of ordinary skill in the art I understand that utilizing a washer above the flashing, below the flashing, or both above and below the flashing, could function to improve the watertightness of the roof mount assembly according to any of the various configurations shown in the '301 Application.

Doc. #55–7 at ¶ 13.  That a person of skill would know placing a soft washer "above …, below … or both above and below the flashing … could … improve the watertightness" of a roof mount assembly is not the material question for 35 U.S.C. §§ 112 and 120.  "It is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose."  *L.A. Biomed.,* 2017 WL 765812, at *6 (internal quotation marks omitted, quoting *Lockwood,* 107 F.3d at 1572).

The question is whether a person of skill would know from the 2009 application that Plaintiff had invented an assembly in which the soft washer was only under the flashing.  On this issue, Mr. Kreutzman's opinion is conclusory.  He does not point to any disclosure that shows a soft washer only under a flashing.  He does not address whether or why a person skilled in the art would consider the location of the soft washer to be immaterial, particularly in light of (a) the applications' emphasis on the soft washer for waterproofing, and (b) all of the applications specifically disclose the soft washer as being only above the flashing or both above and below it.

The Kreutzman Declaration is insufficient to raise a material fact issue regarding whether claim 8's washer under the flashing was disclosed in the 2009 application or intervening applications. It was not. Neither the 2009 application nor any intervening applications provide sufficient written description to support an earlier effective filing date for claim 8 of the '655 patent.

As to claim 4 of the '339 patent (at col. 11, ll. 21–25), Plaintiff does not dispute that this claim recites a single soft washer that can be either above *or* below the flashing. Response at p. 19. Again, the 2009 application discloses the soft washer only above the flashing; the intervening applications disclose either a washer above the flashing or both above and below it. Claim 4 therefore broadens the location of the soft washer and is not supported by written description in the earlier applications. Claim 4 of the '339 patent is not entitled to an earlier effective filing date.

In short, there are no material fact disputes for the Sections 120 and 112 issue. Defendants have presented clear and convincing evidence that the effective filing dates for the patents in suit are September 4, 2013 and October 2, 2014.[15]

III.   *Validity*

Defendants argue "[t]hat which infringes if later, anticipates if earlier." Motion at p. 22 (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1321 (Fed. Cir. 2006) (Newman, J., dissenting)). *See also L.A. Biomed.*, 2017 WL 765812 at *16 (quoting *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573 (Fed. Cir. 1986); *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)). Defendants further argue that having accused their products of

---

[15] The 2009 application also does not support the '517 and '339 patents, which recite a base bracket with "at least one" mounting hole, because the application discloses only mounting holes, plural. Mr. Kreutzman's opinion on this issue is conclusory. Doc. #55-7 at ¶ 10. He refers to Figs. 20-22, 36 and 41, each depicting two mounting holes. Plaintiff argues that two is an example of "at least one," but the point is that the 2009 application is narrower than the asserted claims. It does not describe a base bracket with one mounting hole.

infringement, Plaintiff is estopped from disputing that those products invalidate the asserted claims if their first public sales are earlier than the effective filing dates of the patents in suit. Plaintiff does not dispute that its current contentions of infringement are an admission that the accused products (if given earlier priority) invalidate the patents in suit.  Plaintiff also does not dispute that without the benefit of the 2009 application's filing date (February 5, 2009), the patents in suit would be invalid due to intervening prior art.  Plaintiff further does not dispute that SunModo's accused products became publicly available in 2010, and that the EcoFasten QuikFoot Roof Mount System became available in June 2009.  The court concluded above that the effective filing dates for the patents in suit are in September 2013 and October 2014.  Based on the undisputed facts and law, because the two SunModo accused products were first sold in 2010, they invalidate all of the claims asserted against them.  The same is true of the EcoFasten QuikFoot Roof Mount System, which first sold in June 2009.[16]

As to the other two accused EcoFasten products – the Eco-65 and the Eco-44-NDD – Plaintiff contends that these products are no longer relevant to this issue because in response to the summary judgment motion, Plaintiff dropped them.  The parties dispute whether the footnote is effective to free Plaintiff from its judicial admission.  However, it is unnecessary to reach that issue: the undisputed set of accused products invalidates the same claims asserted against the Eco-65 and Eco-44-NDD, with one exception.  *See, e.g.,* Docs. #52–19 (asserted claims against SunModo products); #52–20 (asserted claims against EcoFasten products).  The exception is claim 3 of the '339 patent, which Plaintiff asserted against only the Eco-65.  Doc. #52–20 at pp.

---

[16] Plaintiff does not dispute that Defendants' evidence shows that EcoFasten QuikFoot systems were sold in June 2009 (or otherwise more than 1 year before September 4, 2013) using the various brackets that Defendants describe (Motion at p. 21, n.16) as part of Plaintiff's infringement contentions.

2–3.  Since Plaintiff is no longer pursuing claims against the Eco-65 (and omitted claim 3 of the

'339 patent in oral argument), the validity of claim 3 of the '339 patent is moot.

Meanwhile, Plaintiff asserted one claim against only EcoFasten's Tile Flashing System:

claim 6 of the '655 patent.  Docs. #52–19; 52–20 (claims and infringement contentions); Motion

at p. 21, n.16.  In their motion, Defendants did not argue this product as invalidating prior art.

However, in Plaintiff's response to the second summary judgment motion, Plaintiff states that it

"notified Defendant EcoFasten on April 11, 2016 that it was no longer pursuing its infringement

allegations against … the EcoFasten Tile Flashing System."  Doc. #69 at p. 34, n.3 (in addition

to the Eco-65 and Eco-44R-NDD).  The validity of claim 6 of the '655 patent accordingly

appears moot.

To the extent Plaintiff still asserts claim 6 of the '655 patent, that claim is invalid.

Defendants argued that the August 5, 2010 and June 4, 2012 publications of Plaintiff's

applications are invalidating prior art: substantially similar disclosures published more than one

year before the applications that led to the patents in suit, and thus either anticipating or making

the patents in suit obvious.  Motion at pp. 20–21 (citing 35 U.S.C. §§ 102, 103; *Research Corp.,*

627 F.3d at 870–71).  Defendants presented several facts in support of this argument.  Docs.

#52–17, 52–18 (2010 and 2012 publications); Docs. #52–23 through 52–26 (a redline and

compilations of figures comparing the patents in suit to the 2010 and 2012 publications).  This

shifted the burden of production to Plaintiff.  *Research Corp.,* 627 F.3d at 870-71.  Plaintiff did

not dispute that the publications would be invalidating prior art for all asserted claims, absent the

2009 effective filing date.

Finally, in a single sentence and note Plaintiff argues that Defendants are still not entitled

to judgment because

> Defendant's Motion has not separately challenged Plaintiff's contention that the Patents-in-Suit are entitled to an even earlier date of priority by virtue of an earlier conception and diligent reduction to practice of the claimed inventions. [n.2]
>
> n.2 To the extent Defendant challenges Plaintiff's asserted priority date, separate and apart from the instant Motion addressing the issue on whether the Patents-in-Suit are entitled to their earliest effective filing date, Plaintiff reserves the right to address Defendant's new arguments at that time.

Response at p. 1.  Defendants did not reply to this argument, and none of the parties appear to address it in the oral argument.

> [O]nce a challenger (the alleged infringer) has introduced sufficient evidence to put at issue whether there is prior art alleged to anticipate the claims being asserted, [or] prior art that is dated earlier than the apparent effective date of the asserted patent claim, the patentee has the burden of going forward with evidence and argument to the contrary.

*Tech. Licensing,* 545 F.3d at 1328–29.  A single sentence and footnote without any reasoning or evidence in support is insufficient to preserve an argument.  *See, e.g., SmithKline Beecham,* 439 F.3d at 1319–20; *United States v. Storey,* 595 F. App'x 822, 824 (10th Cir. 2014).

Defendants' motion brought forward facts to show that Plaintiff's patents in suit are invalid due to the art publicly available beginning in June 2009.  If Plaintiff believed that the patents in suit had earlier priority based on another theory, Plaintiff had the burden of producing facts and argument sufficient to show material fact disputes.  It did not do so.

Because the court is convinced that the asserted claims are not entitled to the 2009 application's filing date, and Plaintiff does not dispute that without the benefit of that effective filing date its asserted claims are invalid, Defendants have shown by clear and convincing evidence that the asserted claims are invalid.

CONCLUSION

Based on the law and the undisputed facts, the court GRANTS summary judgment to Defendants on their motion (Civ. 15–1148, doc. #51; Civ. 15–1151, doc. #46) regarding effective filing dates and invalidity in view of intervening prior art.  In light of this disposition, the court DENIES Defendants' other summary judgment motion (Civ. 15–1148, doc. #56; Civ. 15–1151, doc. #51) as moot.  The clerk of court shall enter judgment in favor of Defendants and close these cases.

So ORDERED this 15th day of March 2017.

BY THE COURT:


 *s/Craig B. Shaffer*
United States Magistrate Judge